SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

BRUSSELS • FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

December 23, 2020

Via ECF

The Honorable Eric N. Vitaliano,
    United States District Court for the Eastern District of New York,
        225 Cadman Plaza East, Courtroom 4C,
            Brooklyn, New York  11201.

Re:    *In re Cronos Group Inc. Securities Litigation*,
        Master File No. 20-cv-1324 (E.D.N.Y.)

Dear Judge Vitaliano:

We represent Defendants Cronos Group Inc., Michael Gorenstein, and Jerry F. Barbato in the above-referenced action.  Defendants respectfully submit this letter requesting a pre-motion conference under Rule III.A of Your Honor's Individual Practices to explain the grounds for their motion to dismiss the Amended Securities Class Action Complaint ("C") (Dkt. No. 37). Defendants reserve the right to supplement these arguments in their motion.

## I.    Background

Cronos is a Canadian company, listed on the NASDAQ and the Toronto Stock Exchange, that manufactures and distributes hemp-derived products in the U.S. and cannabis products in other countries where lawful.  (*See* C ¶¶ 27, 31, 36, 38.)  On March 17, 2020, Cronos announced a review by its Board's Audit Committee.  (C ¶ 104.)  This review determined that Cronos had incorrectly recognized revenue in several transactions with a third party, MediPharm, involving: (i) exchanges of cannabis dry flower for cannabis resin and extracts; and (ii) a sale of dried cannabis that was later deemed a consignment sale.  (C ¶ 118.)  As a result, Cronos restated its unaudited financial statements for the first three quarters of 2019 (C ¶ 116), although its net revenue still almost doubled year-over-year.  *See* Cronos Group Inc., Annual Report (Form 10-K/A) (Mar. 30, 2020).

Based on the restatement, Plaintiff alleges that Defendants' public statements regarding Cronos's revenues and accounting compliance were false and asserts claims under (i) Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against Defendants, and (ii) Section 20(a) of the Exchange Act against the Individual Defendants.  (C ¶¶ 160-74.)

## II.    Plaintiff Does Not Allege the Elements of a Section 10(b) Claim.

"A restatement, by itself, is insufficient to plead a securities fraud claim."  *In re MDC Indus. Direct Co.*, 283 F. Supp. 2d 838, 849 (E.D.N.Y. 2003); *see also Novak* v. *Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("[A]llegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.").  Rather, Plaintiff must allege all elements of securities fraud—including scienter and loss causation—with the particularity required by the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b). Plaintiff falls far short.

The Honorable Eric N. Vitaliano                                                    -2-

***The Complaint Does Not Allege a Strong Inference of Fraudulent Intent.*** To avoid dismissal, the Complaint must plead "facts giving rise to a *strong* inference that the defendant[s] acted with [scienter]." *ECA, Local 134 IBEW Joint Pension Tr. of Chi.* v. *JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). Because Plaintiff does not allege Defendants had actual knowledge that any statement was false when made, he must allege particularized facts demonstrating either (i) "motive and opportunity to commit fraud," or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* Plaintiff has done neither.

To allege "motive and opportunity," Plaintiff must plead particularized facts showing Defendants' "concrete" and "personal" benefits from the false statements and the "means" and "likely prospect" of achieving those benefits. *Gross* v. *GFI Grp., Inc.*, 310 F. Supp. 3d 384, 394 (S.D.N.Y. 2018). The Complaint, devoid of allegations that the Individual Defendants stood to benefit personally from the alleged misstatements, does not purport to allege motive and opportunity.

Instead, Plaintiff makes a series of scattershot allegations of recklessness. None meet this high standard required by this Circuit, which is "at the least conduct that is highly unreasonable and which represents an extreme departure from the standards of ordinary care." *S. Cherry St. LLC* v. *Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009):

1. Plaintiff speculates that the Individual Defendants' "sophistication" meant that the accounting error "would have been incredibly obvious." (C ¶ 135.) Plaintiff alleges no facts to back this up, only guesswork and conclusion. Courts routinely recognize that "[a]llegations of a defendant's experience and expertise . . . are insufficient to raise an inference of a scienter," *Abely* v. *Aeterna Zentaris Inc.*, 2013 WL 2399869, at *18 (S.D.N.Y. May 29, 2013), since "conclusory allegations" cannot support the inference that the defendant had specific knowledge of misconduct. *Tung* v. *Bristol-Myers Squibb Co.*, 412 F. Supp. 3d 453, 460 (S.D.N.Y. 2019).

2. Plaintiff claims the "size" of the restatement and "egregiousness" of the accounting errors show recklessness. (C ¶¶ 131, 133.) However, "it is well established that the size of the [alleged] fraud alone does not create an inference of scienter." *In re PXRE Grp., Ltd. Sec. Litig.*, 600 F. Supp. 2d 510, 545 (S.D.N.Y. 2009). "A restatement is simply a correction, after the fact, of an accounting or other error in financial results," and "[t]he fact of an error, even a large error, does not suggest knowledge or an intent to misstate when the financial results were originally published." *In re Turquoise Hill Res. Ltd. Sec. Litig.*, 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014); *see also Dobina* v. *Weatherford Int'l Ltd.*, 909 F. Supp. 2d 228, 251-52 (S.D.N.Y. 2012) (no scienter despite a "substantial" accounting error because there was no "allegation that the . . . defendants had any contemporaneous basis to believe the information they related was incorrect").

3. Plaintiff asserts that the MediPharm agreements were a "core operation of Cronos" based on their size and that MediPharm was one of Cronos's "largest customers," speculating that Defendants knew how the transactions were "accounted for." (C ¶¶ 132, 134.) Courts in this Circuit question whether the "core operation doctrine" on which Plaintiff relies even "survived enactment of the PSLRA." *Zhong Zheng* v. *Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 181 (E.D.N.Y. 2019). If it did, the doctrine does not apply because the MediPharm agreements did not "constitute[] nearly all of [Cronos's] business." *Das* v. *Rio Tinto PLC*, 332 F. Supp. 3d 786, 816 (S.D.N.Y. 2018).

4. Plaintiff attempts to infer Defendants' recklessness based on Defendants signing Sarbanes-Oxley ("SOX") certifications "attesting to the fact they had reviewed Cronos' financial

The Honorable Eric N. Vitaliano                                                    -3-

statements" and were "directly involved in the design of Cronos' internal controls." (C ¶ 130.) Courts routinely hold that "the signing of a SOX certification, without more, is insufficient to plead scienter," because "allowing [SOX] certifications to create an inference in every case would eviscerate the pleading requirements for scienter set forth in the PSLRA." *Zhong Zheng*, 379 F. Supp. 3d at 181; *see also In re Aceto Corp. Sec. Litig.*, 2019 WL 3606745, at *8 (E.D.N.Y. Aug. 6, 2019) (no scienter based on SOX certification "without alleging any facts to show . . . awareness of or recklessness to the materially misleading . . . statements").

5.   Plaintiff points to an October 17, 2019 report from The Cannalysts discussing transactions engaged in by Aurora Cannabis Inc., a competitor. (C ¶ 136.) "[I]nformation . . . available to [Defendants]" about "a *different* company" does not support an inference that Defendants were reckless in disclosing their own revenues. *In re Ferrellgas Partners, L.P. Sec. Litig.*, 2018 WL 2081859, at *17 (S.D.N.Y. Mar. 30, 2018).

Each of Plaintiff's allegations, separately and together, are plainly insufficient. Plaintiff cannot meet his weighty scienter burden by alleging that "zero plus zero plus zero . . . adds up to something." *City of Brockton Ret. Sys.* v. *Shaw Grp., Inc.*, 540 F. Supp. 2d 464, 475 (S.D.N.Y. 2008).

***Plaintiff Fails to Plead the SOX Certifications Were a Material Misrepresentation.*** In their SOX certifications, the Individual Defendants stated that "based on [their] knowledge," Cronos's financial statements did not contain any material untrue statement or omission and that Cronos's internal controls were adequate. (C ¶ 82.) These are "statements of opinion" and are "only actionable if the opinion turns out to be incorrect *and* the speaker did not genuinely believe it when the statement was made." *Lachman* v. *Revlon, Inc.*, 2020 WL 5577406, at *12 (E.D.N.Y. Sept. 17, 2020). As discussed, Plaintiff has pleaded no particularized facts that Defendants "did not genuinely believe" these statements when made.

***Plaintiff Fails to Plead Loss Causation.*** To plead loss causation, Plaintiff must demonstrate that the "misstatement or omission concealed *something* from the market that, *when disclosed*, negatively affected the value of the security." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261-62 (2d Cir. 2016). Plaintiff may not plead loss causation based on events that "confirm[] what the market already knew." *DoubleLine Cap. LP* v. *Odebrecht Fin. Ltd.*, 323 F. Supp. 3d 393, 459 (S.D.N.Y. 2018). Yet, that is what Plaintiff does. For example, Plaintiff alleges loss causation based on a decline in Cronos's stock price on March 30, 2020, the date Cronos filed its restated Form 10-K reflecting the restatement. (C ¶ 113.) But Plaintiff concedes that, as of that date, the market was fully aware that Cronos would be restating its financial statements, the size of that restatement, and that the SEC was investigating Cronos. (*See* C ¶¶ 96-112.)

**III.     Plaintiff Fails to Adequately Allege Section 20(a) Control Person Liability.**

Because Plaintiff does not plead a primary Exchange Act violation, his Section 20(a) control person liability claim also cannot stand. *See* 15 U.S.C. § 78t(a).

\*          \*          \*

Defendants respectfully request that the Court schedule a pre-motion conference, and are available to answer any questions the Court may have.

Respectfully submitted,

David M.J. Rein

cc:     All counsel of record (by ECF)