## Labaton Sucharow

**Carol C. Villegas**
Partner
212 907 0824 direct
212 907 0700 main
212 883 7524 fax
cvillegas@labaton.com

New York Office
140 Broadway
New York, NY 10005

December 30, 2020

**Via ECF**

The Honorable Eric N. Vitaliano
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:     *In re Cronos Group Inc. Securities Litigation*,
         No. 2:20-cv-01310-ENV-SIL (E.D.N.Y.)

Dear Judge Vitaliano:

On behalf of Lead Plaintiff Keith D. Norman, we write in response to Defendants' letter ("Ds' Ltr."), ECF No. 40, regarding their proposed motion to dismiss the Consolidated Amended Class Action Complaint ("AC," cited "¶_"), ECF No. 37. Defendants do not deny that they made materially misleading statements, and instead, primarily attack the allegations of scienter.

**Scienter**. Defendants barely describe the relevant facts, hoping instead to hide behind a series of cherry-picked quotes from inapposite cases. They rely on cases stating that certain allegations may be insufficient "***standing alone***" or "***by itself***." Ds' Ltr. at 1 (citations omitted). These attacks ignore the totality of the allegations and are contrary to the rule that the analysis of scienter requires the Court to consider "all of the facts alleged, taken collectively," rather than "individual allegation[s], scrutinized in isolation." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Here, the inference of scienter is "at least as compelling as any opposing inference," which is all that is required at this stage. *Id.* at 323-24.

**The Facts**. As a growth stage company, Cronos is largely valued on its ability to grow revenues. ¶5. As Cronos entered 2019, it faced increased pressure to achieve this growth, as it had just received a transformative $1.7 billion cash investment, growing its assets by 10x. ¶¶42-43. Cronos' actual performance in 1Q19 was a ***disastrous*** 40% below analyst expectations. ¶¶49; 107; 109. Defendants bridged the gap between reality and expectations by booking revenue from fictitious sales. Defendants repeated this misconduct in 3Q19 and reiterated the false figures, until they were forced to come clean by the Company's auditor. ¶¶89-92, 104-11.

The scheme was simple, egregious, and blatant. Cronos had a relationship with a company called MediPharm, where Cronos (a) bought processed cannabis oil from MediPharm, and (b) paid MediPharm to process cannabis that Cronos owned into cannabis oil on a "fee for service basis." ¶¶52-55. To Cronos, MediPharm was a vendor and a supplier—not a customer. However, ***Cronos booked fake revenue by*** recording the transfer of cannabis to MediPharm as a sale, when in reality Cronos was not selling cannabis to MediPharm at all. ¶¶58-61.

# Labaton Sucharow

Carol C. Villegas
December 30, 2020
Page 2

This type of accounting fraud is well known enough to have its own name.  A "round trip transaction" occurs when one inflates revenues by booking sales based on outgoing transfers, despite the expectation that those transfers will be offset by the return of that product or similar products.  ¶67.  The following factors, *taken together,* easily meet the *Tellabs* standard; *the strongest inference is that Cronos' false accounting of round trip transactions was fraudulent*.

<u>First</u>, the size of the restatements (39-40% of revenue in two different quarters) supports the inference of scienter.  Errors that big do not go unnoticed or occur accidentally.  The Second Circuit has held that the size of the purported fraud may contribute to an inference of scienter.  *E.g., In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 77 (2d Cir. 2001) (holding that size of accounting error "undermines, at the pleading stage, the argument that the defendants were unaware" of the truth); *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) (similar).

<u>Second</u>, the obviousness of the wrongful accounting—simply booking non-sale transfers as sales—strongly supports the inference of scienter.  It is black letter law that scienter can be established by alleging a "refusal to see the obvious, or to investigate the doubtful."  *S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (collecting cases).  This point is further strengthened by the Defendants' sophistication and backgrounds in accounting and corporate law.  Defendants try to cast aside these allegations since title or experience *alone* do not prove scienter.  Ds' Ltr. at 2.  But sophistication and accounting knowledge are clearly relevant to assessing the totality of the circumstances.  *In re Scottish re Grp. Sec. Litig.,* 524 F. Supp. 2d 370, 394 (S.D.N.Y. 2007) (finding it implausible that the "sophisticated executives" were ignorant of the truth); *SEC v. Sandifur*, 2006 WL 538210 (W.D. Wash. Mar. 2, 2006) (scienter over improper revenue recognition supported by defendant's accounting background).

<u>Third</u>, the circumstances of the misstatements, including the significance of revenue growth for Cronos, the timing of the misstatements just after the $1.7 billion investment, and the magnitude by which Cronos otherwise would have missed analyst expectations, support scienter.  *See New Orleans Emps. Ret. Sys. v. Celestica, Inc.*, 455 F. App'x 10, 14 (2d Cir. 2011) (inference of scienter strengthened by significance of financial metrics at issue to company).

<u>Fourth</u>, the wrongful accounting meant that Cronos was recording MediPharm, *which was not a customer at all*, as one of Cronos' three largest customers.  It is absurd to suggest that the CEO and CFO of a publicly traded company would not know the nature of the Company's dealings with its supposed major customers.  Here, any inquiry into that relationship would have shown that MediPharm was not a customer at all, but a supplier and product processor.  Inversely, the real supply agreement with MediPharm was scheduled to generate 2x the expenses to Cronos than its entire  aggregate cost  of  sales, marketing,  and R&D budget for the prior two years.  Defendants would have closely tracked the true relationship between Cronos and MediPharm and known that it was fraudulent to falsely treat MediPharm as a customer of Cronos.

**Labaton Sucharow**

Carol C. Villegas
December 30, 2020
Page 3

Defendants challenge these allegations as applications of the core operations doctrine and claim that doctrine may not have survived the Private Securities Litigation Reform Act of 1995. Ds' Ltr. at 2. But courts in this Circuit routinely credit reasonable inferences of Defendants' knowledge based on the importance of the subject matter. Chief Judge McMahon recently credited a "core operations" inference, holding that executives are presumed to have knowledge of the matters affecting a significant amount of income, and rejecting the notion that the "core operations doctrine" had been abrogated by the PSLRA, because it is just an extension of the rule stated by *Tellabs* requiring courts to consider the totality of facts and draw reasonable inferences. *See In re Avon Sec. Litig.,* 2019 WL 6115349, at \*20 (S.D.N.Y. Nov. 18, 2019) (McMahon. J.); *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) (similar)

**Fifth**, Defendants were on notice that the round trip transactions were improper, because analysts had reported on similar suspicious potential round trip transactions using the same type of supplier relationship at issue in this case, at Aurora Cannabis Inc. ("ACB"). The most likely conclusion is that Defendants would have known of these allegations against a firm that Cronos formally tracked as a peer, especially since Cronos *owned a large stake* in ACB. *See Ark. Teacher Ret. Sys. v. Bankrate, Inc.*, 18 F. Supp. 3d 482, 486 (S.D.N.Y. 2014) (scienter found where similar issues at "other companies" were publicized); *In re Silver Wheaton Corp. Sec. Litig.*, 2016 WL 3226004, at \*10 n.7 (C.D. Cal. June 6, 2016) (inferring that executives were aware of allegations that another firm in the same industry was engaged in similar wrongdoing).[1]

Defendants' remaining arguments warrant little attention. Defendants claim that SOX certifications are opinion statements. Ds' Ltr. at 3. Even if this were true, those statements were misleading given their scienter. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184 (2015). Defendants challenge loss causation on the final revelation (Mar. 30, 2020), on the theory that nothing new was disclosed. However, new information was revealed, such as key details about the misconduct. ¶144. Further, loss causation is not subject to heightened pleading standards and generally does not present issues to be resolved on a motion to dismiss. *Van Dongen v. CNinsure Inc.*, 951 F. Supp. 2d 457, 469 (S.D. N.Y. 2013); *Emergent Capital, Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). Finally, Defendants only attack on the control person claims under §20(a) of the Exchange Act notes that those claims require a predicate violation, but their attacks on the underlying §10(b) claim fail, preserving the §20(a) claims.

For the reasons stated above, Defendants' proposed motion to dismiss is futile and the case should proceed to discovery.

---

[1] Defendants downplay this by claiming that information about a different company does not support scienter. Ds' Ltr. at 3 (citing *In re Ferrellgas Partners, L.P., Sec. Litig.*, 2018 WL 2081859, at \*17 (S.D.N.Y. Mar. 30, 2018)). That misrepresents the holding of *Ferrellgas*, which merely rejected the specific allegations at issue as conclusory, regardless of whether the supposed knowledge came from working at the company at issue or another firm.

**Labaton Sucharow**

Carol C. Villegas
December 30, 2020
Page 4

Respectfully submitted,

**LABATON SUCHAROW LLP**

/s/ *Carol C. Villegas*
Carol Villegas
Christine M. Fox
Jake Bissell-Linsk
Charles Farrell
140 Broadway
New York, New York 10005
Tel: 212-907-0700
Fax: 212-818-0477
Email: cvillegas@labaton.com
        cfox@labaton.com
        jbissell-linsk@labaton.com
        cfarrell@labaton.com

*Counsel for Lead Plaintiff Keith D. Norman
and Lead Counsel for the Class*

**THE SCHALL LAW FIRM**
Brian Schall
Rina Restaino
1880 Century Park East, Suite 404
Los Angeles, California 90067
Telephone: (310) 301-3335
Facsimile: (310) 388-0192
brian@schallfirm.com
rina@schallfirm.com

*Additional Counsel for Lead Plaintiff Keith
D. Norman*

cc:    All counsel of record (via ECF)